



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-69
Re: A medical and dental service
bureau, which collects claims
and bills for its members only,
making a charge therefor, is
not a collecting agency and is
not liable for the gross re-
ceipts tax provided for in
Article 7061, R. C. S.

This is in answer to your question of whether or
not "The Medical and Dental Service Bureau", a Texas cor-
poration, is liable for the "collecting and commercial
agency gross receipts tax" provided for in Article 7061,
Revised Civil Statutes of Texas.

Your letter is accompanied by a letter from "The
Medical and Dental Service Bureau", and you indicate that
we are to consider the questions and the facts as outlined
in that letter, which says:

"'Is a corporation, formed as a mutually
benevolent and cooperative association, with-
out profit to it and, therefore, without capi-
tal stock, which confines and restricts its
service to its members (who created it), and,
which, among its other activities, adjusts,
enforces and collects accounts, bills or claims
for and on behalf of its members and for its
members only, making a charge for such service,
which, after providing for the costs incurred,

is passed to surplus, the latter to be used
for charitable and eleemosynary purposes only,
without pecuniary gain to any of its members,
taxable as a "Collection Agency", as provided
in Article 7061, Revised Civil Statutes?'"

The letter says that the bureau's charter provides
as follows:

"'The purposes for which the corporation
is formed are to organize and maintain a medi-
cal and dental clearing house or bureau, with
power to adopt and prescribe rules and regula-
tions governing the admission of members of such
association and . . . to provide and maintain .
. . . telephone exchange service so as to assure
medical and dental service will be available at
any hour of the day or night}. . . the establish-
ing, maintenance, and operation of a department
of credit statistics for furnishing its members
information in regard to the financial responsi-
bility, paying habits, and credit worth generally
of individuals in order to guide the members in
the matter of extending credit, and the right to
adjust, enforce or collect all lawful accounts,
notes, bills or claims of every name and nature,
for and on behalf of its members.'

"'This corporation is formed as a mutually
benevolent and cooperative association to main-
tain and support a medical and dental service
bureau in the City of Houston, Texas, without
profit to the corporation and therefore, it does
not have any capital stock.'"

We assume that the members consist entirely of phy-
sicians and dentists.

The only statute we are directly concerned with in
deciding this question is Article 7061 of the Revised Civil
Statutes of Texas, which reads as follows:

"Each individual, company, corporation, or
association, owning, operating, managing or con-
trolling any collecting agency, commercial agency

or commercial reporting credit agency within
this State, and charging for collections made,
or business done, or reports made, shall make
quarterly, on the first days of January, April,
July and October of each year, a report to the
Comptroller under oath of the individual or of
the president, treasurer, or superintendent of
such company, corporation or association, showing
from business done within this State the gross
amount received in the payment of charges for
collections made and business done and reports
made during the quarter next preceding. Such
individuals, companies, corporations or associa-
tions at the time of making said report shall
pay to the Treasurer of this State an occupation
tax for the quarter beginning on said date equal
to one-half of one per cent of said gross receipts
as shown by said report."

From what we have found in our investigation the
terms "collecting agency" and "collection agency" mean the
same thing. A definition of collection agency is found in
McCarthy v. Hughes, 36 R. I. 66, 88 Atl. 984, which reads
as follows:

"'A collection agency is a concern whose
business it is to collect all kinds of claims,
as well as notes, drafts, and other negotiable
instruments, on behalf of others, and to ren-
der an account of the same.'"

That definition was taken in that case from 6 Am. & Eng.
Ency. of Law 209, published in 1898; and it is repeated as
the definition of collection agency in 14 Corpus Juris Secon-
dum 1324, published in 1939. This indicates that it has
been accepted as the definition of collection agency for a
period of forty-one years. We believe that the acts of the
bureau in question brings it within the terms of this de-
finition.

Although Article 7061 (quoted above) was passed in
1907, there is only one appellate court case that we can find
construing it, and that is the case of Merchants Red Book Com-
pany v. State, (Comm. App.) 125 S. W. (2d) 279. The facts in
that case were that the Merchants Red Book Company, a corpor-
ation, worked in association with the Retail Merchants Asso-
ciation of Dallas and collected and furnished to the members
of said association information as to the financial standing,
ability and credit of persons, and charged the members there-

for, and did everything that would make the company a "commercial reporting credit agency" except that it did not furnish information to everyone but only to its members, who consisted of Dallas merchants. The Commission of Appeals, Section A, speaking through Judge German, held that Article 7061 did not apply to the Merchants Red Book Company and that the legislature did not intend to levy this tax against a company of this kind, and said:

"It is altogether probable that a corporation or individual could engage in the business of collecting at their own expense information concerning the credit rating of individual purchasers and customers and sell this information to retail merchants, in the form of a red book or by reports, or both; and build up a large and profitable enterprise. Such a business would then undoubtedly take on the character of a 'Commercial' credit reporting agency, such as R. G. Dun & Co., and other similar agencies undoubtedly are. Obviously, such agencies come under the statute. We think, however, the situation here is distinctly different. This enterprise is undoubtedly so related to the conduct of the business of retail merchants as to really be an indispensable part of same, or an important incident thereto. If, for instance, the Retail Merchants Association of Dallas should choose to select a secretary to collect, preserve and systematize all of the information obtained by each of the members, and to furnish such information to the respective subscribers or participants in such enterprise, charge each a fee or contribution upon the basis of service furnished, which charges constituted a fund to defray expenses, including salary of the secretary, it could not be reasonably contended that such Association would come within the meaning of the law in question. We think the situation here is in practical effect the same thing. Although the Chiltons may have originally undertaken the establishment of this enterprise for the purpose of making gain, yet we think that the action of the Retail Merchants Association in conducting their credit affairs through the Chiltons, rather than through a secretary of their own choosing, making contributions

of information, and in turn obtaining service upon a basis of charges fixed or approved by themselves, has not made the enterprise a 'commercial' one. It is their method of setting up a clearing house of information concerning credit of proposed purchasers and customers, which is an essential factor in their business, and they no doubt are thus conducting their credit affairs as efficiently and at as low cost as they could be otherwise conducted. Disregarding technical rules of ownership, it may appropriately be said that this business is owned to as large extent by the subscribers as by the Chiltons. Its creation and existence has been brought about by the cooperation of the merchants themselves. We do not think that the fact the Chiltons are paid rather substantially for their services makes this a 'commercial' enterprise, in the sense of being one organized and operated for profit to those who are its sole promoters. It is more properly speaking a cooperative enterprise between the Merchants Association and those who act in the capacity of managers, and for this reason we do not think the Legislature intended to tax a business of this kind." (Underscoring ours).

We believe that if a group of physicians and dentists organized a company similar to the Merchants Red Book Company and it did all of the things done by a commercial credit reporting agency but limited its services to the physicians and dentists who were members of the organization that the company would not be liable for the tax prescribed in Article 7061; and we reach this conclusion by virtue of the opinion in the case of Merchants Red Book Company v. State, supra. Article 7061 applies alike to a "collecting agency" and a "commercial reporting credit agency". If we are correct in our conclusion that an organization doing the business of a commercial reporting credit agency but limiting its services to the physicians and dentists who are members thereof is not liable for this tax, then we must also reach the conclusion that an organization doing the business of a collecting agency but limiting its services to the physicians and dentists who are members thereof is likewise not liable for this tax.

It is our opinion that, under the facts we have before us, "The Medical and Dental Service Bureau" is not liable for the gross receipts tax provided for in Article 7061, Revised Civil Statutes of Texas.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Cecil C. Rotsch_

Cecil C. Rotsch
Assistant

CCR:JM

APPROVED FEB 26, 1940

_Gerald C. Mann_

ATTORNEY GENERAL OF TEXAS

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE